IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| C.T. and M.T., *as parents and next friends of C.T.*, *a minor*, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 2:21-cv-235-RAH-JTA [WO] |
| ELMORE COUNTY SCHOOL DISTRICT, ) ) ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On March 18, 2021, C.T., a minor, and his parents, C.T. and M.T. (collectively, C.T.), filed this suit against the Elmore County School District (the District) seeking attorneys' fees under the Individuals with Disabilities Education Act, (IDEA), 20 U.S.C. § 1415. The parties since have filed the presently pending motions, including C.T.'s motion for judgment on the pleadings (Doc. 24) and the District's renewed motion to dismiss,[1] or in the alternative, motion for summary judgment (Doc. 25).[2] And for the foregoing reasons, the court concludes that C.T.

---

[1] On April 19, 2021, the District filed its first motion to dismiss (Doc. 7), which remains pending. Because the court considers this initial motion as the basis for this order in the context of the District's renewed motion to dismiss, (Doc. 25), the initial motion (Doc. 7) will be denied as moot.

[2] A Rule 12(c) motion for judgment on the pleadings is properly converted into a motion for summary judgment when the motion "requires a district court to look outside the pleadings." *Baez v. LTD Fin. Servs., L.P.*, 757 F. App'x 842, 845 (11th Cir. 2018). Likewise, "consideration of material falling outside the

1

is entitled to the relief he seeks; that is, attorneys' fees associated with the administrative matter involving C.T. and the District. C.T.'s motion is therefore due to be granted, and the District's denied.

## I. FACTS[3]

C.T. is a student enrolled at Wetumpka Elementary School, a school within the Elmore County School District system. (Doc. 1 at 3.) C.T. has a history of developmental problems and began receiving early intervention services at the age of three and one-half years based on a professional determination that he was an infant/toddler with a disability. (Doc. 1-8 at 5.) Due to his disability, he continued to receive special education services upon entering kindergarten in 2018 and again when he repeated kindergarten the following year. (*Id*. at 6.)

C.T. was reevaluated for special education services in October of 2020. The evaluating psychometrist, who had not previously taught or otherwise known C.T., concluded that C.T. did not qualify for special education services. (*Id.* at 7.) Later that same month, the IEP (Individualized Education Program)/eligibility team at Wetumpka Elementary, including the psychometrist, met to determine C.T.'s

---

pleadings converts a motion to dismiss into one for summary judgment." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701 (11th Cir. 2016) (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002)). Based on the parties' evidentiary submissions and this court's consideration of materials beyond the pleadings, the court construes the pending motions (Docs. 24, 25) as motions for summary judgment.

[3] The facts pertinent to the instant case are largely without dispute, as the basis for C.T.'s relief is founded in the two due process complaints filed by the parties in the underlying administrative proceeding and the hearing officer's ultimate decision on those complaints.

eligibility going forward for special education services. (*Id*. at 8.) As a result of the psychometrist's evaluation that C.T. did not suffer from a disability having an adverse effect on his educational performance, the team determined that C.T. did not meet Alabama State Department of Education (ASDE) criteria to continue receiving special education services. (*Id*. at 9.) In other words, C.T. would no longer receive special education services from the District, even though he previously had been provided such services on account of his disability for over three years.

Upset that this decision was detrimental to his well-being, contrary to the law, and contrary to the opinions of C.T.'s teachers, on October 27, 2020, C.T. challenged this decision by initiating a request for a due process hearing. (Doc. 1 at 4–5.) In his due process complaint, C.T. challenged the evaluation on multiple fronts, including the psychometrist's unprofessional behavior and her refusal to consider certain information such as the observations and opinions of C.T.'s teachers (all of whom continued to believe that C.T. needed special education services). (*See* Doc. 1-1.) C.T. also sought reimplementation of his IEP and restoration of his special education status, as well as the performance of a new, full evaluation and convening of a new IEP meeting. Finally, C.T. requested that all acts of retaliation by the psychometrist immediately cease and that the psychometrist be reprimanded. (Doc. 1-1 at 10–12.)

While recognizing that C.T. was raising a procedural challenge to the decision to terminate C.T.'s access to special education services, the District nevertheless

moved to dismiss C.T.'s due process hearing request.  Per the District's argument, C.T.'s due process complaint was insufficient to the extent it did not provide adequate facts pertaining to the identification, evaluation, educational placement, or provision of free appropriate public education (FAPE). (Doc. 1-3.)  The hearing officer quickly denied this motion, finding that C.T., who was proceeding *pro se* at that time, had used the appropriate form provided by the ASDE and otherwise complied with the requirements for the due process submission.  (Doc. 1-4.)

Undeterred, the District filed a due process complaint of its own, asserting that C.T. was "not eligible to receive special education services," that the "District performed a comprehensive special education reevaluation," and that "the District complied with all IDEA regulations in conducting the evaluation." (Doc. 1-7 at 2.) In its summary, the District went further, stating that "the District files this due process hearing request to demonstrate the appropriateness of the District's evaluations" of C.T. (Doc. 1-7 at 3.)

C.T. then retained legal counsel and participated in a contested hearing before a hearing officer on both parties' due process complaints.  On January 7, 2021, the hearing officer released his due process decision.  (*See* Doc. 1-8.)   In addition to noting that the testimony of the psychometrist concerning certain events "was not credible," (*see* Doc. 1-8 at 9), the officer concluded that the psychometrist's evaluation "was not an appropriate evaluation" and that "what occurred in this case

did not meet evaluation requirements/free appropriate education requirements recognized as the basis for a due process hearing complaint in 20 U.S.C. §1415(b)(6)." (Doc. 1-8 at 10.)  The hearing officer also noted, among his other criticisms, that the psychometrist had refused to consider the opinions of three of C.T.'s teachers, all of whom believed that C.T. needed special education services. In the hearing officer's view, the IEP/eligibility team's failure to comply with the Alabama regulations "constitute[d] a procedural violation of the IDEA." (*See* Doc. 1-8 at 16.)  And finally, the officer concluded that the procedural inadequacies rose to such a level as to deprive C.T. of educational benefits, impede C.T.'s right to FAPE, and significantly impede C.T.'s parents' opportunity to participate in the decision-making process regarding the provision of FAPE to C.T. (Doc. 1-8 at 16.)

The officer then ordered the District to convene an eligibility team consisting of "qualified professionals and the parent" to consider a wide range of information including teacher recommendations in order to determine whether C.T. is a child with a disability who had special education needs. (Doc. 1-8 at 17.)  In other words, the officer required the District to start again and properly reevaluate C.T.'s disability status, which it did using the criteria and considerations required by the hearing officer. (Doc. 21-1 at 10.)  The new evaluation resulted in a determination that C.T. was still eligible for specialized instruction due to an emotional disability. (*See* Doc. 21-1 at 12, 14; Doc. 21-2.)

C.T. filed the instant action after the District refused to pay C.T.'s legal fees even though, according to C.T., he was the prevailing party in the due process proceeding.

## II.   STANDARD OF REVIEW

As previously noted, due to the court's consideration of materials beyond the pleadings, both pending motions will be construed as motions for summary judgment. The court thus applies the summary judgment standard of review.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). No genuine issue of material fact exists if the opposing party fails to make a sufficient showing on an essential element of his case as to which he would have the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and "resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990) (citation omitted).

The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment. *See, e.g., Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). "Cross-motions . . . will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Am. Bankers Ins. Group*, 408 F.3d at 1331.

### III.   DISCUSSION

Congress passed the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education . . . that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). The IDEA requires any "State educational agency, State agency, or local educational agency" which receives federal funds to "establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415(a); *see also* 34 C.F.R. § 300.500; Ala. Admin. Code r. 29-8-9.08(9).

"Once a child is determined to have a disability . . . local educational agencies are obligated by the IDEA to reevaluate him when it is determined that a reevaluation is warranted or the child's parent or teacher asks for reevaluation." *J.S.R. by Childs v. Dale Cty. Bd. of Educ.*, Case No. 1:13-CV-582-WKW, 2015 WL 5692804, at *2 (M.D. Ala. Sept. 28, 2015) (Watkins, J.) (citing 20 U.S.C. § 1414(a)(2)(A)). "Subject to a few exceptions, reevaluations should not occur more often than annually but at least every three years." *Id.* (citing 20 U.S.C. § 1414(a)(2)(B)).

The IDEA provides that "[in] any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a *prevailing party* who is the parent of a child with a disability . . . ." 20 U.S.C. § 1415 (i)(3)(B)(i)(I) (emphasis added). In an action for IDEA attorneys' fees based on underlying due process proceedings that is brought as a lawsuit apart from the underlying administrative proceedings—i.e., not in an appeal from the due process hearing—a district court sits as a trial court to hear the separate complaint for attorneys' fees. *See Ga. State Dep't of Educ. v. Derrick C.*, 314 F.3d 545, 550–51 (11th Cir. 2002).

The gravamen of the competing motions in this case concerns whether C.T. is a "prevailing party," an issue heavily influenced by the Supreme Court's decision in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001). *Buckhannon* rejected the formerly governing "catalyst theory,"

which allowed an award of "prevailing party" attorneys' fees to a plaintiff whose lawsuit caused a voluntary change in the defendant's conduct. *Id*. at 601, 610. Instead, the Supreme Court held that a "prevailing party" must receive some judicial (or, in the IDEA context, administrative) relief on the merits of his or her claim whereby the legal relationship of the parties must materially change. *Id*. at 603–04.

Following *Buckhannon*, the Eleventh Circuit noted that "only a party who obtains a judgment on the merits or a similar court-ordered change in the parties' legal relationship . . . may be considered a prevailing party for purposes of a fee award" under the IDEA. *Robert K. v. Cobb Cty. Sch. Dist*., 279 F. App'x 798, 801 (11th Cir. 2008) (quoting *Loggerhead Turtle v. County Council*, 307 F.3d 1318, 1323-24 (11th Cir. 2002)). *See also Buckhannon*, 532 U.S. at 604. "Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). "The plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 792 (1989); *Jefferson Cty. Bd. of Educ. v. Bryan M*, 706 F. App'x 510, 514 (11th Cir. 2017). "No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment . . . ." *Farrar*, 506 U.S. at 113.

Here, the District argues that C.T., though successful in obtaining a reevaluation that ultimately led to the reversal of the psychometrist and eligibility team's conclusion as to C.T.'s disability status, is not a "prevailing party" under the IDEA. This is so because, according to the District, the due process hearing officer did not conclusively determine that C.T. was entitled to continue receiving special education services. Instead, the District continues, the officer only required a reevaluation of C.T., a finding that, in the District's view, did not materially alter the legal relationship of the parties and was at best a "minor, inconsequential victory." *Canup v. Chipman–Union, Inc.*, 123 F.3d 1440, 1443 n.3 (11th Cir. 1997). And in an attempt to bolster this position, the District offers various case precedents in which courts denied fees to IDEA plaintiffs who achieved very slight success or who enjoyed only a Pyrrhic victory. (*See* Doc. 8 at 6.)

C.T., to no one's surprise, disputes the District's argument, noting that had he not filed his due process complaint and not opposed the District's own due process complaint, he would have immediately lost access to special education services. He further notes that the District lost its own due process complaint, in which the District sought, but failed to garner, a determination that C.T. was "not eligible to receive special education services," that the "District performed a comprehensive special education reevaluation," and that "the District complied with all IDEA regulations in conducting the evaluation." (Doc. 1-7.)

This court's review of the due process materials filed by the parties reveals that the District substantially understates the significance of the hearing officer's decision and the outcome of the due process matter.  While C.T. requested several types of relief in his due process complaint, his primary focus was on the District psychometrist's flawed and faulty evaluation rendering C.T., who previously had been determined to be a child with a disability entitled to special education services, ineligible for the special education services at Wetumpka Elementary.  That evaluation was also central to the District's own due process complaint in which it sought an order from the hearing officer approving the District's evaluation. (Doc. 1-7.)

Granted, the hearing officer did not reach any conclusions concerning C.T.'s disability status or C.T.'s entitlement to special education services, but the hearing officer did address the sufficiency of the evaluation, which was the main point of contention in the parties' dueling due process complaints.  Still, consistent with the relief sought by C.T., the hearing officer found the evaluation was flawed and faulty, so much so that it constituted a procedural violation of the IDEA.  And more specifically, his conclusion detailed that the evaluation, in violating the IDEA, deprived C.T. of certain educational benefits, impeded C.T.'s right to a FAPE, and significantly impeded C.T.'s parents' opportunity to participate in the decision-making process regarding the provision of FAPE to C.T.  This determination

"satisfies the legal requirement that [C.T.] obtain at least some of the relief sought, by virtue of a ruling that altered his legal relationship with Defendant." *J.S.R.*, 2015 WL 5692804, at *9 (citing *Buckhannon*, 532 U.S. at 604). *See also Miller v. D.C.*, Case No. 13-CV-1854 (AK), 2014 WL 11459905, at *5 (D.D.C. June 30, 2014) ("[T]he Hearing Officer did find that the insufficient IEP constituted a denial of a FAPE and did order a new IEP meeting. This represents a material alteration in the legal relationship. It also constitutes a grant of relief.").

Further, because the officer required the District to perform a new evaluation, required the District to consider certain information and criteria when performing this new evaluation, and precluded the cessation of special education services to C.T. due to the otherwise faulty and flawed evaluation of a child with a disability—all in C.T.'s favor—it is clear that the hearing officer's decision constituted a change in the legal relationship between the parties. *See Bush ex rel. A.H. v. D.C.*, 579 F. Supp. 2d 22, 30 (D.D.C. 2008) ("[A] closer inspection of the record reveals that [the plaintiff] achieved several of her goals in filing the due process complaint, including an order requiring [the school] to convene an IEP meeting to review and revise the student's IEP."); *Ector Cty. Indep. Sch. Dist. v. VB*, 420 F. App'x 338, 343 (5th Cir. 2011) (granting attorney's fees to plaintiffs) ("With his decision, the [hearing officer] obligated [the school] to take specific actions, including a functional

behavior assessment that [the school] had previously determined was unnecessary, within certain deadlines.").

The hearing officer's decision was also a resounding loss to the District as it concerned the District's own due process complaint, which sought a finding from the hearing officer that the evaluation was "comprehensive" and "compliant with all IDEA regulations." (Doc. 1-7 at 2.)  Indeed, there is little doubt that the result of C.T.'s reevaluation (that he was a child with a disability) was only made possible by the hearing officer's decision that procedural deficiencies in the previous evaluation warranted a redo. (*See* Doc. 1-8.) Such a decision carries judicial imprimatur. *See Herbin ex rel. Herbin v. D.C.*, 362 F. Supp. 2d 254, 265 (D.D.C. 2005) ("Having successfully sought a ruling directing defendants to reevaluate [the child], *an effort defendants opposed*, plaintiff is a prevailing party on that claim and is entitled to recover attorney's fees and costs.") (emphasis added); *cf. E.E. v. Tuscaloosa City Bd. of Educ.*, Case No. 7:15-CV-01370-LSC, 2016 WL 3618362, at *9 (N.D. Ala. July 6, 2016) (Coogler, J.) ("The record is bereft of, and parties cannot point to, any indication that the PST, considering the results of that speech-language evaluation, *arrived at findings that changed N.E.'s educational plan*.") (emphasis added).

That is, C.T's reevaluation "constitutes a change in legal status insofar as defendants contested [the complaint] and offer no suggestion that they would have voluntarily complied with plaintiffs' requests." *D.R. ex rel. Robinson v. Gov't of*

13

*D.C.*, 637 F. Supp. 2d 11, 18 (D.D.C. 2009) (citing *Herbin*, 362 F. Supp. 2d at 265). "Moreover, it was an adversarial administrative proceeding . . . not a settlement or other agreement, that compelled [the District] to provide the relief that plaintiffs requested." *Id.* (citing *Buckhannon*, 532 U.S. at 605).

The court also finds as unpersuasive the District's argument that C.T. was not a child with a disability at the time the hearing officer ordered relief to C.T. True, the Eleventh Circuit has not yet addressed whether a parent of a child not yet determined to be a "child with a disability" can recover attorneys' fees under the IDEA, though other courts have. *See, cf. D.S. v. Neptune Twp. Bd. of Educ.*, 264 F. App'x 186, 189–90 (3d Cir. 2008) (holding that to recover attorneys' fees under 1415(i), the child must be determined to have a disability); *Burton v. Cleveland Heights Univ. Heights Bd. of Educ.*, Case No. 18-3595, 2019 WL 2714860, at *2–3 (6th Cir. June 27, 2019) (same) (citing *Neptune Twp.*); *Meridian Joint Sch. Dist. No. 2 v. D.A.*, 792 F.3d 1054, 1066–67 (9th Cir. 2015) (same); *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 243–44 (5th Cir. 2010) (same). Essentially, these courts have interpreted the language in § 1415(i)(3)(B)(i)(I) as allowing the award of attorneys' fees to "parent[s] of a child with a disability" to mean that attorneys' fees cannot be awarded to parents of a child who has yet to be determined to have a disability at the time of adjudication.

14

But that question of statutory interpretation is not implicated by the facts presented here. C.T. was a child with a disability before the due process complaint was filed, and he remains a child with a disability following the ultimate resolution of that due process complaint. The only time that he was not labeled as a child with a disability was the short period between the challenged evaluation and the hearing officer's decision finding that evaluation was flawed, faulty, and violative of the IDEA. The hearing officer's finding essentially rendered the determination that C.T. was not a child with a disability a nullity. As such, C.T. was, quite simply, always a child with a disability.

Indeed, it makes little sense that a parent of a child with a disability would be unable to claim that he or she is a prevailing party in a circumstance where the parent successfully thwarted a school district's attempt to terminate special education services based on a procedurally flawed and faulty evaluation that violated the IDEA. After all, had C.T.'s parents not initiated their due process complaint, C.T. would have lost access to those services solely because of a faulty evaluation that violated his statutory procedural rights under the IDEA.

## V.  CONCLUSION

Accordingly, C.T. is entitled to his attorney's fees as a prevailing party in the underlying due process matter, and it is ORDERED as follows:

1. C.T.'s motion for judgment on the pleadings (Doc. 24) is GRANTED to the extent that the court finds that plaintiff C.T. was the prevailing party in the underlying administrative proceeding;

2. The District's motion to dismiss, or in the alternative for summary judgment (Doc. 25) is DENIED; and,

3. The District's initial motion to dismiss (Doc. 7) is DENIED as moot.

The Court is unable discern whether there is a dispute as to the amount of attorneys' fees sought. Thus, it is further

ORDERED that, a challenge, if any, to the amount of attorneys' fees sought shall be filed by motion on or before September 10, 2021.

DONE, on this the 27th day of August, 2021.

       /s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE